764 F.2d 1309
 54 USLW 2052, Fed. Sec. L. Rep. P 92,222
 SECURITIES INVESTOR PROTECTION CORPORATION, Eugene W. Bell,
Trustee For the Liquidation of Joseph Sebag Incorporated,
and John L. Britton, Trustee for the Liquidation of First
State Securities Corporation, Plaintiffs-Appellants,
v.
Seymour VIGMAN, et al., Defendants,
and
Eugene C. Ferri, Jr., and Mobile International Corporation,
Defendants- Appellees.
 Nos. 84-6074, 84-6311.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 8, 1985.
Decided July 2, 1985.
 
 Stephen C. Taylor, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for plaintiffs-appellants.
 Daniel L. Goelzer, Gen. Counsel, Paul Gonson, Sol., Jacob H. Stillman, Asso. Gen. Counsel, Robert Mills, Sp. Counsel, SEC, Washington, D.C., amicus curiae.
 Bill E. Schroeder, Patrick J. Steele, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BARNES, Senior Circuit Judge, REINHARDT, Circuit Judge, and GILLIAM, District Judge.*
 BARNES, Senior Circuit Judge:
 
 
 1
 Appellants, Securities Investor Protection Corporation ("SIPC"), Eugene W. Bell and John L. Britton appeal the dismissal of four of seventy-five defendants from the securities fraud action brought in the United States District Court for the Central District of California. The district court dismissed these defendants, finding that it lacked personal jurisdiction over them, and that venue was improper in the Central District. This appeal presents questions of first impression in this Circuit, and we reverse the district court's dismissal of the defendants.
 
 I. BACKGROUND
 
 2
 Appellant SIPC was established pursuant to the Securities Investors Protection Act of 1970, as amended, 15 U.S.C. Sec. 78aaa, et seq., in response to the collapse of numerous brokerage houses, in order to provide greater protection for customers of registered brokers and dealers and members of national securities exchanges. H.R.Rep. No. 1613, 91st Cong.2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News, 5254, 5254-55. Congress created the SIPC as a private, nonprofit corporation, whose members would consist of most of the broker-dealers registered under the Act. 1970 U.S.Code Cong. & Ad.News at 5258.
 
 
 3
 The SIPC has the power to sue and be sued, and to complain and defend in its corporate name and through its own counsel, in any State, Federal or other court. 15 U.S.C. Sec. 78ccc(b)(1). In addition, the statute empowers the SIPC to seek a protective decree from a court of competent jurisdiction when one of the broker-dealer members has failed or is in danger of failing to meet its obligations to customers, and to appoint a trustee for the liquidation of the business of the broker-dealer member. See 15 U.S.C. Sec. 78eee.
 
 
 4
 Upon application of the SIPC, on July 24, 1981, John L. Britton ("Britton") was appointed trustee for the liquidation of First State Securities Corporation ("FSSC"), a Delaware corporation with its principal place of business in North Miami, Florida. On July 27, 1981, Eugene W. Bell ("Bell") was appointed trustee for the liquidation of Joseph Sebag Incorporated ("Sebag"), a Delaware securities broker-dealer corporation, registered and licensed by the National Association of Securities Dealers, with its principal place of business in Los Angeles, California. These appointments were made pursuant to the provisions of 15 U.S.C. Sec. 78eee.
 
 
 5
 This action was filed in the United States District Court for the Central District of California on July 22, 1983 by Appellants SIPC, Bell and Britton under the powers granted by 15 U.S.C. Sec. 78ccc(b)(1). The complaint alleged securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Act") and Rule 10b-5 thereunder; a conspiracy under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961, et seq. ("RICO"); common law fraud; and breach of fiduciary duty. Appellants alleged in their complaint that the seventy-five defendants engaged in acts which appellants contend to be predatory manipulative schemes practiced upon member broker-dealers of the SIPC and the investing public concerning the stock of seven companies traded in the over-the-counter market, and that defendants engaged Sebag and FSSC as vehicles in furtherance of their scheme.
 
 
 6
 All seventy-five defendants in this action have moved the district court to dismiss and/or strike the complaint, basing their motions on various grounds. The district court entered an order dismissing certain of the seventy-five defendants on May 30, 1984, finding that it lacked personal jurisdiction over those defendants and that venue was improper in the Central District of California. On August 20, 1984, the district court amended the order, and dismissed without leave to amend but not on the merits, the complaint as to four of the defendants who are the appellees in this appeal. The claims against appellees were limited to alleged violations of the Act and common law fraud, and did not include any alleged violations under RICO or for breach of fiduciary duty.
 
 
 7
 Only two of the appellees remain in this appeal: Eugene C. Ferri, Jr. ("Ferri"), a United States citizen, and Mobile International Corporation ("Mobile"), a foreign corporation. The other two appellees, Leo Vela and Harry Drooker were dismissed by orders of this Court, pursuant to stipulations of the parties.
 
 
 8
 In dismissing the appellees, the district court rejected appellants' argument that Section 27 of the Act (15 U.S.C. Sec. 78aa) allows nationwide service of process and confers personal jurisdiction over the defendants. It also refused to apply a co-conspirator theory of venue. The co-conspirator theory of venue provides that where venue is established in a district for any defendant in a securities action which is brought against multiple defendants alleging a common scheme, then venue is proper as to all defendants even though certain defendants did not commit an act within the district. See generally, Securities and Exchange Commission v. Diversified Industries, 465 F.Supp. 104, 111 (D.D.C.1979) The court certified the May 30, 1984 order and the August 20, 1984 amended order for immediate appeal pursuant to Federal Rules of Civil Procedure 54(b), and appellants filed a timely notice of appeal.
 
 II. ANALYSIS
 
 9
 There are two issues to be resolved by this court:
 
 
 10
 (1) Whether the district court erred in finding that it lacked personal jurisdiction over certain defendants in an action brought under the Securities Exchange Act of 1934; and
 
 
 11
 (2) Whether the district court erred when it failed to apply a co-conspirator venue theory to an action under the Securities Exchange Act of 1934.
 
 A. Standard of Review
 
 12
 This Court reviews de novo the dismissal of a complaint without leave to amend. Whittington v. Whittington, 733 F.2d 620, 621 (9th Cir.1984). We must determine whether the district court erred as a matter of law. See e.g., Des Brisay v. Goldenfield Corp., 549 F.2d 133, 134 (9th Cir.1977); Fitzsimmons v. Barton, 589 F.2d 330, 331 (7th Cir.1979); Mariash v. Morrill, 496 F.2d 1138, 1140 (2d Cir.1974).
 
 B. The Act
 
 13
 Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78aa), grants jurisdiction to the federal courts and provides for venue and service of process. Touche Ross & Co. v. Redington, 442 U.S. 560, 577, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). The jurisdiction to consider claims brought under the Act is vested exclusively in the federal courts. Clark v. Watchie, 513 F.2d 994, 997 (9th Cir.), cert. denied, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975).
 
 
 14
 Appellants argue that (1) Section 27 of the Act (15 U.S.C. Sec. 78aa) provides for nationwide service of process, thereby conferring personal jurisdiction over defendants Ferri and Mobile, and (2) the district court applied a narrower standard for determining venue than that allowed under the Act, and it should have adopted a co-conspirator theory of venue. We agree.
 
 
 15
 When considering a Section 10(b) and Rule 10b-5 claim for relief, the court should liberally construe that claim in order to effectuate the policies underlying the federal securities laws. See, e.g., Affiliated Ute Citizens v. United States, 406 U.S. 128, 150-54, 92 S.Ct. 1456, 1470-72, 31 L.Ed.2d 741 (1972); Superintendent of Insurance v. Bankers Life and Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); Mansbach v. Prescott, Ball and Turben, 598 F.2d 1017, 1924-25 (6th Cir.1979).
 
 
 16
 In distinguishing between the principles of jurisdiction and venue, we note that "[j]urisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants." Still v. Rossville Crushed Stone Co., 370 F.2d 324, 325 (6th Cir.1966) (per curiam) (emphasis added) (citing Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939); 1 Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.), Sec. 71), cert. denied, 387 U.S. 918, 87 S.Ct. 2030, 18 L.Ed.2d 970 (1967). In order for the district court to hear a case, the court must have not only personal jurisdiction over the parties, but also venue.
 
 C. Personal Jurisdiction
 
 17
 In order to find personal jurisdiction over Appellees Ferri and Mobile in the Central District of California, there must be an applicable rule or statute which potentially confers jurisdiction over the defendants. See, Amba Marketing Systems, Inc. v. Jobar International, Inc., 551 F.2d 784, 787 (9th Cir.1977). In addition, assertion of such jurisdiction must accord with constitutional principles of due process. Id. at 787.
 
 
 18
 The general jurisdictional statute which confers the power of the district court to hear a cause arising from a violation of a federal law or statute is 28 U.S.C. Sec. 1331 (federal question). "A claim based on a violation of a federal statute is a claim arising under federal law within the meaning of 28 U.S.C. Sec. 1331." Haas v. Wieboldt Stores, Inc., 725 F.2d 71, 73 (7th Cir.1984). More specifically, Section 27 of the Act (15 U.S.C. Sec. 78aa) confers federal jurisdiction over claims of violations of federal securities law. Id. at 73. See also, Hilgeman v. National Insurance Co. of America, 547 F.2d 298, 301 (5th Cir.1977); Mariash v. Morrill, 496 F.2d at 1142; accord, GRM v. Equine Investment and Management, 596 F.Supp. 307, 311 (S.D.Tex.1984); Clement v. Pehar, 575 F.Supp. 436, 438 (N.D.Ga.1983). Section 27 provides that any suit or action to enforce any liability or duty created under the Act may be brought in the district where any act or transaction constituting the violation occurred, and process may be served in any district where the defendant is an inhabitant or wherever the defendant may be found.[1]
 
 
 19
 In addition, Rule 4(f), Federal Rules of Civil Procedure, sets the territorial limits within which service of process will be effective upon a party.[2] This rule limits the district court's ability to obtain personal jurisdiction over a defendant to jurisdiction in the state within which thedistrict court sits, unless a statute of the United States confers territorial limits beyond the boundaries of that state.
 
 
 20
 In view of the foregoing, we find that there are rules and statutory authority which support nationwide service under the Act and confer personal jurisdiction in the Central District of California.
 
 
 21
 Appellees Ferri and Mobile argue that Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) controls. We disagree. In Leroy, the Court reversed the normal order of considering personal jurisdiction in advance of venue, and found venue to be improper under Section 27 of the Act. However, the Court based its finding of lack of venue on the fact that Section 28(a) of the Act (15 U.S.C. Sec. 78bb(a)) imposed no duty upon out-of-state officials to defend an action in a distant forum. See Leroy, 443 U.S. at 181-187, 99 S.Ct. at 2718. The Court went on to hold "Sec. 27 of the 1934 Act does not provide a basis for personal jurisdiction." Id. at 180, 99 S.Ct. at 2715.
 
 
 22
 The facts in Leroy are clearly distinguishable from the facts here. In Leroy, Great Western, whose principal place of business was in Texas, announced its intent to make a tender offer for a corporation with its principal place of business and most of its assets located in Idaho. Great Western filed an action in the federal district court in Texas, seeking to invalidate the Idaho takeover statutes as they purported to apply to interstate cash tender offers to purchase securities traded on the national exchange. The defendants in Leroy were Idaho state officials, and the Court based its finding of improper venue and lack of personal jurisdiction on Section 28(a) of the Act. The Court stated that "[t]here is nothing in its text or its legislative history to suggest that it imposes any duty on the States or that indicates who might enforce any such duty. [Section 28(a) ] was plainly intended to protect, rather to limit, state authority." Id. at 182, 99 S.Ct. at 2716. (emphasis added).
 
 
 23
 The defendants in the case before us are private parties and not state officials. Furthermore, the appellants are not challenging the validity of a state statute. SIPC, Bell and Britton brought this action alleging that the private defendants' actions constituted violations of federal securities laws. Because the Court in Leroy based its finding of lack of personal jurisdiction on the fact that venue was improper, the Court's holding with respect to personal jurisdiction does not apply here. "It is simply too late in the day to argue that Section 27 does not authorize nationwide service of process on any individual named in the complaint, provided, of course, the complaint states a claim under the 1934 Act." Mariash v. Morrill, 496 F.2d at 1142.
 
 
 24
 We are persuaded by the holdings of the Second Circuit in Mariash and the Seventh Circuit in Fitzsimmons v. Barton, 589 F.2d 330 (7th Cir.1979), that Section 27 of the Act (15 U.S.C. Sec. 78aa) authorizes nationwide service of process. However, we must now determine whether this statute, which confers jurisdiction over the defendants, accords with constitutional principles of due process. See Amba Marketing Systems, Inc., 551 F.2d at 787.
 
 
 25
 We address briefly the due process considerations inherent in personal jurisdiction. The Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), set forth the "minimum contacts" doctrine to be applied in determining whether due process will be afforded to defendants where a court asserts in personam jurisdiction over them. See Id. at 316, 66 S.Ct. at 158. International Shoe and its progeny, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); and more recently Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), have required some "contacts, ties or relations" with the forum state in order to confer in personam jurisdiction over a defendant. See Worldwide Volkswagen, 444 U.S. at 299, 100 S.Ct. at 568.
 
 
 26
 We note that the line of cases flowing from International Shoe deals with a state court's jurisdiction over a non-resident defendant, generally by the use of a state long-arm statute. When a federal district court is sitting in diversity, we agree that due process requires that the defendant have some "contacts, ties or relations" with the forum state in order to confer, in the district court, personal jurisdiction over the defendant. Nonetheless,
 
 
 27
 'minimum contacts' with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal question case by due process concerns. The Constitution does not require the federal districts to follow state boundaries.... It is clear that Congress can provide for nationwide service of process in federal court for federal question cases without falling short of the requirements of due process.
 
 
 28
 Johnson Creative Arts & Wool v. Masters, Inc., 743 F.2d 947, 950 (1st Cir.1984) (citations and footnotes omitted).
 
 
 29
 Where a federal statute such as Section 27 of the Act confers nationwide service of process, "the question becomes whether the party has sufficient contacts with the United States, not any particular state." Nelson v. Quimby Island Reclamation District, 491 F.Supp. 1364, 1378 (N.D.Cal.1980). See also, FTC v. Jim Walter Corp., 651 F.2d 251, 256 (5th Cir.1981) (due process requires only that a defendant in a federal suit have minimum contacts with the United States, the sovereign that created the court); Fitzsimmons v. Barton, 589 F.2d at 333 (the defendant, a resident citizen of the United States, had sufficient contacts with the United States to support the fairness of exercise of jurisdiction over him by a United States court); Mariash v. Morrill, 496 F.2d at 1143 (where the defendants reside within the territorial boundaries of the United States, the "minimum contacts," required to justify the federal government's exercise of power over them, are present).
 
 
 30
 We hold, therefore, that so long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court. The district court erred in finding that it lacked personal jurisdiction over Ferri, a United States citizen.
 
 
 31
 Nevertheless, in Travis v. Anthes Imperial Ltd., 473 F.2d 515 (9th Cir.1974), this Court held that Congress intended Section 27 to " 'authorize service on a defendant who can be "found" only in a foreign country ...' " Id. at 529 (quoting Leasco Data Processing Equipment Corp. v. Kerman, 468 F.2d 1326, 1340 (2d Cir.1974)). The Court subsequently concluded that " 'although the section does not specifically deal with in personam jurisdiction, it is reasonable to infer that Congress meant to assert personal jurisdiction over foreigners not present in the United States to but, of course, not beyond the bounds permitted by the due process clause of the Fifth Amendment....' " Travis, 473 F.2d at 529 (quoting Leasco, 468 F.2d at 1340). The Travis court concluded that when service of process had been made outside of the United States, personal jurisdiction could be acquired over "defendants who have acted within the district or sufficiently caused foreseeable consequences there, ..." Id. at 529.
 
 
 32
 Having concluded that Section 27 authorizes nationwide service of process, and that personal jurisdiction in any district is therefore conferred over resident defendants upon a showing of minimum contacts with the United States, we conclude that due process demands imposition of a similar rule with respect to foreign defendants. Thus, whether Section 27 will confer personal jurisdiction over a non-resident defendant depends on whether the defendant has acted within any district of the United States or sufficiently caused forseeable consequences in this country. Cf. Travis, supra.[3] We remand this question in order that the district court may make a determination as to whether the consequences of Mobile's acts within the United States were reasonably forseeable to confer personal jurisdiction over Mobile.
 
 D. Venue
 
 33
 The venue issue is also governed by Section 27 of the Act (15 U.S.C. Sec. 78aa). Hilgeman v. National Insurance Co. of America, 547 F.2d at 301. Under Section 27 of the Act, a suit to enforce any liability or duty created under the Act may be brought either (1) in the district wherein the defendant is found or is an inhabitant or transacts business, or (2) in the district wherein any act or transaction constituting the violation occurred. See note 2, supra; see also, Mariash v. Morrill, 496 F.2d at 1144; GRM v. Equine Investment and Management Group, 596 F.Supp. at 311; Carty v. Health-Chem Corp., 567 F.Supp. 1, 2 (E.D.Pa.1982).
 
 
 34
 Since neither Ferri nor Mobile is found within the Central District of California, and it does not appear from the record that they transact, or have ever transacted, business within the Central District, we need to determine whether venue is proper based upon whether any act or transaction constituting a violation occurred in the Central District.
 
 
 35
 It does not appear from the briefs filed in this case, or from the record below, that Appellees Ferri or Mobile had any actual contacts with the forum (the Central District of California) or that they performed any acts within the forum in violation of the Act. However, "[t]he 'act' contemplated by the statute need not be crucial, nor must 'the fraudulent scheme be hatched in the forum district.' " Hilgeman v. National Insurance Co. of America, 547 F.2d at 301 (quoting Hooper v. Mountain State Securities Corp., 282 F.2d 195, 204 (5th Cir.1960)). "Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum." Ritter v. Zuspan, 451 F.Supp. 926, 928 (E.D.Mich.1978), and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).
 
 
 36
 Appellants argue that a co-conspirator venue theory should be applied to determine venue in an action brought for violations under the Act in which there are numerous defendants, and where there is more than one appropriate forum in which to bring the action. We agree, and note that the Supreme Court has stated in dictum, "that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility ... may be assigned as the locus of the claim." Leroy v. Great Western United Corp., 443 U.S. at 185, 99 S.Ct. at 2717. (citation omitted). In this case, since the defendants are generally located in either California or Florida, and the securities broker-dealer corporations engaged by the defendants in furtherance of their scheme, Sebag and FSSC, had their principal places of business in California and Florida, respectively, this action could have been maintained with "approximately equal plausibility" in either state. There is an important interest to be served by joining all defendants in one action, thereby avoiding duplicitous litigation and inconsistent results. Wyndham Associates v. Bintliff, 398 F.2d 614, 619 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968).
 
 
 37
 Under the co-conspirator venue theory, where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. This is true even in the absence of any contact by some of the defendants in the forum district. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3824 (1976).
 
 
 38
 The co-conspirator venue theory has been adopted by the Second and Fifth Circuits as applied to multi-defendant litigation alleging violations of the federal securities statutes.[4] In addition, this venue theory has been widely adopted by the federal district courts in securities litigation.[5] We agree with these courts. The strong policy favoring the litigation of related claims in the same forum supports the application of a co-conspirator venue theory in actions based upon violations of federal securities statutes.
 
 
 39
 We recognize that in adopting the co-conspirator venue theory in this Circuit, "it is inevitable that some party will be inconvenienced no matter where the suit is tried." Wyndham Associates v. Bintliff, 398 F.2d at 620-621. However, the inconvenience of requiring one defendant in a multi-defendant action to litigate in a distant forum is greatly outweighed by the interest of judicial economy and bringing together in one lawsuit, all related claims and alternative theories.
 
 
 40
 Ferri and Mobile claim that even assuming a co-conspirator venue theory applies to a securities action, appellants have not alleged sufficient facts to connect them to the alleged conspiracy, and therefore venue is not proper. We agree that a plaintiff's complaint must set out more than mere bald allegations of a claim. However, "a complaint need only set out a generalized statement of facts from which [a] defendant will be able to frame a responsive pleading." Wright & Miller, Federal Practice and Procedure: Civil Sec. 1357 (1969); See also, Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir.1977).
 
 
 41
 The appellants have alleged that Ferri maintained securities accounts at FSSC and that Mobile maintained a securities account at A.G. Becker, incorporated through FSSC. Although we question whether these facts are sufficient to connect Appellees Ferri and Mobile with the alleged scheme engaged in by the other defendants, and which appellants allege to be in violation of federal securities law, we are mindful of the liberal pleading amendment provisions of the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 15(a) (leave to amend shall be freely given when justice so requires). Thus, upon remand, the district court should allow appellants to amend their pleadings to show the nexus between these two defendants and the scheme in which the other defendants are involved.
 
 E. Pendent State Claims
 
 42
 In addition to violations of the Act, appellants asserted a claim for common law fraud against Appellees Ferri and Mobile. This pendent state claim was dismissed when the district court dismissed the entire complaint without leave to amend as to Appellees Ferri and Mobile.
 
 
 43
 The determination of whether to exercise jurisdiction over pendent state claims is within the discretion of the district court, and the district court is not required to exercise such jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Kehr v. Smith Barney Harris Upham & Co., 736 F.2d 1283, 1287 (9th Cir.1984). Thus, on remand, we leave to the discretion of the district court whether the claim for common law fraud against Ferri and Mobile should be reinstated.
 
 III. CONCLUSION
 
 44
 The appropriate standard to be applied in determining whether the district court has personal jurisdiction over defendants in an action brought under the Securities and Exchange Act of 1934, is whether that defendant had sufficient contacts with the United States and not whether the defendant had sufficient contacts with the forum district. The district court clearly had personal jurisdiction over Appellee Ferri, a United States resident. If the district court, on remand, finds that Appellee Mobile had sufficient contacts with the United States, and that its acts caused foreseeable consequences, then it would have personal jurisdiction over Mobile as well.
 
 
 45
 The district court erred in failing to adopt a co-conspirator venue theory in this action. Since we hold that such a theory applies to actions brought under the federal securities laws, the district court, on remand, should allow the appellants to amend their pleadings to demonstrate the relationship between these two defendants and the predatory manipulative scheme engaged in by the other defendants.
 
 
 46
 REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 15 U.S.C. Sec. 78aa. Jurisdiction of Offenses and Suits
 The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations in this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of Title 28. No costs shall be assessed for or against it in the Supreme Court or other such courts.
 
 
 [2]
 Fed.R.Civ.P. 4(f): Territorial Limits of Effective Service
 All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and when authorized by statute of the United States or by these rules, beyond the territorial limits of that state....
 
 
 [3]
 The district court properly quashed service on Mobile. The court properly applied state procedural law in determining the proper method for service of process pursuant to Federal Rules of Civil Procedure 4(c)(2)(C). Under California Code of Civil Procedure Sec. 416.20, a complaint must be served upon a person who is a trustee of a dissolved corporation and its stockholders. Although California Corporations Code Sec. 2011 allows officers, directors and shareholders to be served, California courts have concluded that the Corporations Code "does not apply to foreign corporations which have dissolved." North American Asbestos Corp. v. Superior Court, 128 Cal.App.3d 138, 144, 179 Cal.Rptr. 889 (1982). Nonetheless, under Section 27 of the Act, if the district court finds that Mobile's acts were sufficient to confer personal jurisdiction, appellants should be allowed to perfect service of process
 
 
 [4]
 Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); Hilgeman v. National Insurance Co. of America, 547 F.2d 298 (5th Cir.1977)
 
 
 [5]
 See e.g., Stewart v. Fry, 575 F.Supp. 753 (E.D.Mo.1983); DeMoss v. First Artists Production Co.. Ltd., 571 F.Supp. 409 (N.D.Ohio 1983); Hill v. Turner, 492 F.Supp. 61 (M.D.Pa.1980); Securities and Exchange Commission v. Diversified Industries, Inc., 465 F.Supp. 104 (D.D.C.1979); Warren v. Bokum Resources Corp., 433 F.Supp. 1360 (D.N.M.1977); Bertozzi v. King Louie International, Inc., 420 F.Supp. 1166 (D.R.I.1976); Arpet v. Homas, 390 F.Supp. 908 (W.D.Pa.1975); Securities and Exchange Commission v. National Student Marketing Corp., 360 F.Supp. 284 (D.D.C.1973); Levin v. Great Western Sugar Co., 274 F.Supp. 974 (D.N.J.1967); Zorn v. Anderson, 263 F.Supp. 745 (S.D.N.Y.1966)