**GENERAL LATEX AND CHEMICAL CORPORATION (OF N.C.), Plaintiff,**

v.

**PHOENIX MEDICAL TECHNOLOGY, INC., Defendant.**

No. C–C–91–75–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 31, 1991.

1980), *reprinted in* 1 Environmental Law Institute, *Superfund: A Legislative History,* at 180     (1982).

John H. Culver, III, Kennedy Covington Lobdell & Hickman, Charlotte, N.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Plaintiff's motion, filed May 2, 1991, for summary judgment. Plaintiff, on that same date, filed a brief and affidavit in support of the motion. On May 16, 1991, Defendant filed a memorandum in opposition to the motion, but did not file an affidavit in support of its position. Plaintiff, on May 24, 1991, filed a reply memorandum.

The simple facts of this case indicate Plaintiff, a North Carolina corporation, shipped to Defendant, a South Carolina corporation, chemicals in late 1990 and early 1991. Plaintiff claims in its complaint and the uncontroverted affidavit of its Vice President, Jack Hobbs, that Defendant has failed to pay for shipments in the amount of $283,141.51. Although Defendant contests the amount owed in its answer, Defendant does admit that "[A]ll goods ordered by Defendant were shipped by Plaintiff from North Carolina". *See Defendant's Answer*, filed April 10, 1991, at par. 5. The only affirmative defense raised by Defendant is that the Court lacks jurisdiction and venue over this matter. *See id.* at par. 3 and par. 1 of affirmative defense.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c) of the Federal Rules of Civil Procedure. The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its

Michael J. Rousseaux, William J. Waggoner, Waggoner Hamrick Hasty Monteith Kratt & McDonnell, Charlotte, N.C., for plaintiff.

claims and that a genuine issue for trial exists. *Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* F.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences from the facts in light most favorable to the party opposing the motion for summary judgment. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. at 1356–57; *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational factfinder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

■ In this case, Defendant has failed to rebut the affidavit of Plaintiff's Vice President, Jack Hobbs. Instead, Defendant has rested upon its answer and the mere allegations or denials of the adverse party's pleadings—the very thing Rule 56(e) provides cannot be done. Moreover, Defendant has not come forward with any evidence to support its affirmative defenses. Accordingly, the Court believes that summary judgment in favor of Plaintiff is appropriate.

Even if the Court analyzed Defendant's position based on its answer and memorandum in opposition to Plaintiff's motion, the conclusory statements therein, which are unsupported by affidavit or other evidence, are insufficient as a matter of law to survive Plaintiff's motion for summary judgment.

As to the jurisdictional defense, the burden of establishing personal jurisdiction rests with the party asserting it. *See* 2A *Moore's Federal Practice*, Par. 12.07[2.–2] at 12–55 (1990) (hereinafter "Moore's"). However, if the court decides a motion alleging lack of jurisdiction over a person without an evidentiary hearing based only on the written submissions of the parties, the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists. *Id.* at 12–56; *see Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989); *Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir.1982). Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing. *See Dowless*, 800 F.2d at 1307.

The allegations of the complaint, unless controverted by opposing affidavits, must be taken as true. *See Thompson*, 755 F.2d at 1165. There is no requirement that the pleadings be verified and no lack of credibility will be implied by the absence of a verification of plaintiff's complaint. *See Dowless*, 800 F.2d at 1307 (citing *Bush v. BASF Wyandotte Corp.*, 64 N.C.App. 41, 45, 306 S.E.2d 562, 565 (1983)). The court may accept affidavits, interrogatories, depositions or any other legitimate method of discovery. *See Thompson*, 755 F.2d at 1165. All conflicts in fact must be resolved in favor of the plaintiff for purposes of determining whether a prima facie showing of personal jurisdiction has been made. *Id.; see also Combs*, 886 F.2d at 676; *Moore's* at 12–56.

The question of jurisdiction over a person must be answered by a two step analysis. *See Dowless*, 800 F.2d at 1306.

First, the court must determine whether the North Carolina long-arm statute confers personal jurisdiction in the court. *Id.; cf. Thompson*, 755 F.2d at 1165–66 ("[I]t is well settled that a defendant is amenable to the personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits" ... (quoting) *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)). The Fourth Circuit has held that the statutory provisions be given a liberal construction in order to ensure that North Carolina courts maintain the full jurisdictional powers permissible under federal

due process. *See Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062 (4th Cir.1982).

Second, the court must determine whether the exercise of that statutory power will violate the due process clause of the United States Constitution. *Dowless,* 800 F.2d at 1306 (citing *Vishay Intertechnology,* 696 F.2d at 1064); *see also Combs,* 886 F.2d at 675; *Moore's* at 12–60. The United States Supreme Court has held that the due process clause of the federal constitution requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, a defendant should not be surprised by the institution of a lawsuit in a foreign forum where the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. ·*See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ This Court has consistently held that it should consider the following factors when determining whether minimum contact with the forum state exists: (1) the quantity of the contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked benefits and protections of the law of the forum state. *See Uniprop Manufactured Housing Communities Income Fund II v. Home Owners Funding Corp. of America,* 753 F.Supp. 1315 (W.D.N.C.1990); *Richmar Development v. Midland Doherty Services,* 717 F.Supp. 1107, 1118 (W.D.N.C. 1989); *Federal Deposit Insurance Corp. v. Kerr,* 637 F.Supp. 828, 839 (W.D.N.C.1986); *Monroe Hardware Co. v. Robinson,* 621 F.Supp. 1166, 1168 (W.D.N.C.1985); *Hardin v. DLF Computer Co., Inc.,* 617 F.Supp. 70, 71 (W.D.N.C.1985).[1] The factors must be analyzed on a "case-by-case basis, determining what is fair, reasonable, and just according to the circumstances". *Richmar Development,* 717 F.Supp. at 1118 (quoting *Vishay Intertechnology, Inc.,* 696 F.2d at 1068). A single transaction in some instances may be sufficient to satisfy the requisite minimum contacts if it gives rise to the liability asserted in the suit. *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985).

■ In this case, the Court believes that the North Carolina long-arm statute confers this Court with jurisdiction of this matter. Sections 1–75.4(5)(a) and (d) of North Carolina General Statute provide:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(jl) of the Rules of Civil Procedure under any of the following circumstances:

(5) Local Services, Goods or Contracts. —In any action which:

1. Several North Carolina courts have deemphasized the determination of whether minimum contacts exist. The North Carolina long-arm statute extends to the outer bounds of due process, making analysis under the statute and the due process clause one and the same. *See FDIC v. British–American Corp.,* 726 F.Supp. 622, 629 (E.D.N.C.1989); *Hanes Companies, Inc. v. Ronson,* 712 F.Supp. 1223, 1226 (M.D.N.C.1988) (holding that long-arm statute "[m]akes available to North Carolina courts the full jurisdictional powers permissible under federal due process ... [W]hen a plaintiff relies on (the statute), the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process."); *cf. Western Steer–Mom 'N' Pop's,*

*Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 264 (W.D.N.C.1984). Thus, given the liberal construction of the North Carolina long-arm statute, the prevailing law in North Carolina presumes the existence of in personam jurisdiction. *Southern Case, Inc. v. Management Recruiters International, Inc.,* 544 F.Supp. 403, 405 (E.D.N.C.1982).

It is unclear to the Court whether these cases completely eliminate the need to determine whether minimum contacts with the forum state exists. It does appear to the Court that the Eastern District of North Carolina is correct in concluding that analysis under the long-arm statute and the due process clause is one and the same since the statute extends to the outer bound of due process.

a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the Plaintiff ...

d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction.

For purposes of both the long-arm statute and due process considerations, numerous North Carolina courts have held that a single contract executed in North Carolina or to be performed in North Carolina may be a sufficient minimal contact upon which to base in personam jurisdiction. *See First–Citizens Bank & Trust Co. v. McDaniel,* 18 N.C.App. 644, 197 S.E.2d 556 (1973), *overruled on other grounds sub. nom., United Buying Group, Inc. v. Coleman,* 296 N.C. 510, 251 S.E.2d 610 (1979); *Byrum v. Register's Truck & Equip. Co.,* 32 N.C.App. 135, 231 S.E.2d 39 (1977); *cf. Staley v. Homeland, Inc.,* 368 F.Supp. 1344 (E.D.N.C.1974). Where an out-of-state defendant entered into a contract with a North Carolina plaintiff to ship defendant's product to the plaintiff, such acts manifested a willingness for the defendant to conduct business within North Carolina. *See Collector Cars of Nags Head, Inc. v. G.C.S. Electronics.,* 82 N.C.App. 579, 347 S.E.2d 74 (1986). Conversely, the North Carolina Supreme Court held that an offer by a nonresident defendant to purchase shirts from a North Carolina manufacturer was sufficient minimal contacts with the state to satisfy the long-arm statute. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.,* 318 N.C. 361, 348 S.E.2d 782 (1986); *see also ETR Corp. v. Wilson Welding Serv., Inc.,* 96 N.C.App. 666, 386 S.E.2d 766 (1990). Furthermore, the transfer of large amounts of cash into or out of North Carolina to a nonresident has been deemed a shipment of "things of value" pursuant to § 1–75.4(5)(d), and thus a sufficient minimal contact for purposes of the long-arm statute. *See Church v. Carter,* 94 N.C.App. 286, 380 S.E.2d 167 (1989).

In the case at hand, Defendant has admitted in its answer that "[A]ll goods ordered by Defendant were shipped by Plaintiff from North Carolina". *See Defendant's Answer,* filed April 10, 1991 at par. 5. Moreover, Jack Hobbs in his affidavit has indicated that the amount of goods shipped by Plaintiff to Defendant was valued in excess of $300,000.00. Defendant has not introduced any evidence to rebut this contention. Therefore, the Court is required to conclude that the value of the chemicals shipped is not in dispute.

Based on the cases cited above, the Court believes that the flow of such a large amount of goods from North Carolina to a nonresident Defendant and the anticipated flow of money to North Carolina are more than sufficient to establish the minimum contacts requirements of the long-arm statute. Because the North Carolina long-arm statute extends to the outer bounds of due process considerations, the Court also believes that the due process minimal contacts requirements of *International Shoe* has also been established in this case. Accordingly, summary judgment is appropriate in favor of Plaintiff on Defendant's affirmative jurisdictional defense.

■ As to the venue defense raised by Defendant, 28 U.S.C. § 1391(a) has been recently amended. Effective December 1, 1990, the venue statute for diversity jurisdiction provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

Prior to the amendment, venue was proper in any district in which all plaintiffs or defendants resided, or "in which the claim arose". The amendment to the statute is designed to increase the number of districts in which an action can be brought by eliminating "the litigation breeding phrase

'in which the claim arose'". *See Federal Courts Study Committee Implementation Act of 1990*, H.R.Rep. No. 101–734, 101st Cong. 2nd Sess.1990 64–65, *reprinted in* 1990 WL 200439 (Leg.Hist.). The amendment also avoids the problem created by the frequent cases in which substantial parts of the underlying events have occurred in several districts. *Id.* By the clear language of the amendment and the legislative history, it is evident to the Court that Congress has eliminated many of the venue defenses previously relied upon by defendants.

In this case, the Court believes that venue lies in this district. Defendant entered into an agreement with Plaintiff whereby chemicals would be shipped from this district to South Carolina. Defendant's failure to pay for the goods had an obvious impact on this district and led to a cause of action accruing here. Therefore, venue is proper under 28 U.S.C. § 1391(a)(2). Furthermore, as previously discussed, Defendant is subject to in personam jurisdiction in this district. Thus, venue is also proper under 28 U.S.C. § 1391(a)(3).

In conclusion, the Court finds that Defendant has failed to rebut the affidavit submitted by Plaintiff. Accordingly, the Court believes no genuine issues of material fact are in dispute, and summary judgment in favor of Plaintiff is appropriate. The Court further finds that even when Defendant's answer and its memorandum in opposition are taken into account, that summary judgment is appropriate. The only defenses raised by Defendant, lack of jurisdiction and venue, are unavailable as a matter of law. Because Defendant has failed to rebut the amount in controversy raised by Plaintiff in the affidavit of Jack Hobbs, the Court will enter a judgment in favor of Plaintiff in the amount of $283,-141.51 plus prejudgment interest at the legal rate.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's motion for summary judgment be, and hereby is, GRANTED.